**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION 12-0239-WS-N** |
| | ) |
| **74.57 ACRES OF LAND, MORE OR** | ) |
| **LESS, *et al.*,** | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This newly filed matter comes before the Court on plaintiff's Motion to Deposit Funds (doc. 4) and Motion for *Ex Parte* Order for Delivery of Immediate Possession (doc. 5).

**I.     Background.**

On April 6, 2012, the United States filed a Complaint in Condemnation (doc. 1) seeking to effectuate the taking of certain property under the power of eminent domain and the award of just compensation to owners and parties in interest.[1]  The real property in question is two adjacent parcels located in Conecuh County, Alabama, the first consisting of 33.25 acres of land, more or less, and the second consisting of 41.32 acres of land, more or less.  The Government proposes to take fee simple title of the 33.25-acre tract (subject to existing easements of record for public utilities, drainage and so on), and to take a permanent restrictive easement as to the 41.32-acre tract to impose stringent limits on the use and development of such property by its owners.  Although the final figures are ultimately for the Court to decide in these proceedings, the pleadings reflect that estimated just compensation for these takings is $46,024 for the smaller parcel and $107,802 for the larger parcel.  The Government's stated purpose for taking these

---

[1]     Named defendants in this action are property owners Sue S. Cramer and Stowers Timberlands, LLC, as well as interested parties Federal Land Bank Association of South Alabama, FLCA and Conecuh County Revenue Commissioner.  Service of process does not appear to have been perfected as to any defendants, and none of them have appeared in this matter to date.

parcels is to facilitate the Secretary of the Navy's extension of runways and acquisition of clear zones at Middleton Field, a Naval Outlying Landing Field in Evergreen, Alabama.

Contemporaneously with the Complaint, the Government filed a Declaration of Taking (doc. 2), Motion to Deposit Funds (doc. 4), and Motion for *Ex Parte* Order for Delivery of Immediate Possession (doc. 5).[2]  With respect to the Motion to Deposit Funds, the Government seeks leave to deposit with the Clerk of Court the amount of $153,826.00, which equals the combined total of the estimated just compensation figures for both parcels.  Meanwhile, the Motion for *Ex Parte* Order sets forth the Government's request for entry of an order vesting immediate possession of the subject property to the Government, without allowing the property owners to be heard *ex ante*.

**II.    Analysis.**

"The United States has the authority to take private property for public use by eminent domain, … but is obliged by the Fifth Amendment to provide 'just compensation' to the owner thereof."  *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 9, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984) (citation omitted).  Pursuant to the Declaration of Taking Act, the Government may bring an expedited proceeding to acquire land, or an easement in land, for public use by filing a declaration of taking setting forth a statement of authority under which the land is being taken, the public use for which the land is being taken, a description of the land, the estate or interest in the land being taken, a plan showing the land being taken, and an estimate of the just compensation amount.  *See* 40 U.S.C. § 3114(a).  Upon the Government's filing of the declaration of taking and depositing the estimated compensation amount in the court registry, the following events occur by operation of law: "(1) title to the estate or interest specified in the declaration vests in the Government; (2) the land is condemned and taken for the use of the Government; and (3) the right to just compensation for the land vests in the persons entitled to the compensation."  40 U.S.C. § 3114(b); *see also East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 825 (4th Cir. 2004) (in a Declaration of Taking Act case, "[t]itle and the right to

---

[2]    The Government also filed and  is serving a Notice of Condemnation (doc. 3) on all defendants and interested parties pursuant to Rule 71.1(d), Fed.R.Civ.P.  That Notice of Condemnation notifies defendants of the pendency of this action, the Government's intent to condemn defendants' property for public purposes, defendants' right to file an answer setting forth all objections and defenses within 21 days, and so on, as required by the applicable rule.

possession vest in the government immediately upon the filing of a declaration and the requisite deposit"). Significantly, however, "[w]hile the DTA gives the government the right of immediate possession, the time and terms of possession are fixed by the district court. … The precise compensation figure is determined later." *East Tennessee*, 361 F.3d at 821 (citation omitted).

The Supreme Court has recognized that the purpose of the Declaration of Taking Act is "to give the Government immediate possession of the property," while simultaneously providing the former owner "immediate cash compensation to the extent of the Government's estimate of the value of the property." *United States v. Miller*, 317 U.S. 369, 381, 63 S.Ct. 276, 87 L.Ed. 336 (1943). The Government may avail itself of the expedited procedures prescribed by the Act "whenever an officer of the United States is authorized to bring a condemnation action in federal court." *United States v. 1.04 Acres of Land, More or Less, Situate in Cameron County, Tex.*, 538 F. Supp.2d 995, 1007 (S.D. Tex. 2008). The type of condemnation under which the Government takes immediate possession pursuant to § 3114 is sometimes described as the "quick-take" method. *East Tennessee*, 361 F.3d at 821.

Bearing that statutory backdrop in mind, the Court now considers the two pending motions. First, the Government has requested leave to deposit the sum of $153,826.00, which equates to the total estimated just compensation amount for the two parcels, in the Registry of the Court in an interest-bearing account. This is the proper procedure. The Declaration of Taking Act provides that, for title to vest, the Government must "fil[e] the declaration of taking and deposit[] in the court … the amount of the estimated compensation stated in the declaration." 40 U.S.C. § 3114(b). And the Federal Rules of Civil Procedure state that the Government "must deposit with the court any money required by law as a condition to the exercise of eminent domain and may make a deposit when allowed by statute." Rule 71.1(j)(1), Fed.R.Civ.P. Pursuant to both § 3114(b) and Rule 71.1(j)(1), the Government's Motion to Deposit Funds (doc. 4) is **granted**. The Government is **ordered**, on or before **April 19, 2012**, to remit to the Clerk of Court a United States Treasury check in the amount of **$153,826.00**. The Clerk, in turn, is **directed** to deposit those funds into an interest-bearing account pending further instruction from the Court. Pursuant to the schedule promulgated under 28 U.S.C. § 1914, a fee of 10% of the interest earned on the deposited funds will be assessed by the Clerk of Court at the time of disbursement.

The Government's Motion for *Ex Parte* Order for Delivery of Immediate Possession stands on a different footing.  The Government seeks immediate possession of the two parcels, before service of process has been completed on defendants and without affording them notice or opportunity to object.  Although the Government's position is that such *ex parte* orders are entered in Declaration of Taking Act cases as a matter of course, this Court's research and experience suggest otherwise.  Significantly, the Act does <u>not</u> state that possession necessarily passes to the Government instantaneously upon filing of a declaration of taking and deposit of estimated just compensation.  Rather, the Act provides that the court "may fix the time within which, and the terms on which, the parties in possession shall be required to surrender possession to the petitioner."  40 U.S.C. § 3114(d)(1).  Federal courts have construed this language as empowering (and perhaps even obligating) district courts to examine the equities of the matter to evaluate whether some undue hardship to the present landowner or occupant might warrant some temporal gap between the filing of the declaration of taking and the owners' surrender of possession.  *See East Tennessee*, 361 F.3d at 825 ("Although the district court fixes the time and any terms of the possession, the government takes possession of the condemned property as a matter of course, unless the landowner or occupant demonstrates some undue hardship that warrants a delay."); *United States v. Certain Land in Borough of Manhattan, City, County and State of New York*, 332 F.2d 679, 682 (2nd Cir. 1964) (remanding for district court to exercise its statutory power "to determine the terms and conditions of possession by the government" after hearing from such witnesses as all parties may wish to call); *United States v. 6,576.27 Acres of Land, More or Less, in McLean County, N.D.*, 77 F. Supp. 244, 246 (D.N.D. 1948) (act affording court the power to fix time and terms of possession confers "duty on the part of this Court to see that such date for possession and terms of possession are in accordance with the equities").[3]

The Government has identified no reason why immediate transfer of possession of the property is of such urgency that it must take place before this Court can receive input from the

_____

[3]     This Court has previously opined, albeit in an unpublished decision not carried by on-line legal research services, that the Act's "statutory flexibility reflects that immediate surrender of possession may not in all cases be feasible or warranted," and that defendants should be afforded a reasonable opportunity to demonstrate undue hardship before delivery of possession is reflexively granted to the Government.  *See United States v. 0.187 Acres of Land Known as Parcel 102, 200 St. Louis Street, Mobile, AL et al.*, Civil No. 05-0060, slip op. at 1-2 (S.D. Ala. Feb. 25, 2005) (doc. 24).  The same reasoning attaches here.

defendants.  There is no indication, for example, that construction crews are standing by at that location with heavy equipment, awaiting the judicial green light to commence the Middleton Field runway extension project, with significant monetary losses or military aviation training deficiencies accruing in the interim.  Nor has the Government made even a barebones showing that defendants would not suffer undue hardship if immediate possession were ordered in this case.[4]  Accordingly, the Motion for *Ex Parte* Order for Delivery of Immediate Possession (doc. 5) is **denied**, without prejudice to the Government's ability to renew same upon proper notice to defendants, such that they may have a fair opportunity to demonstrate undue hardship, or a showing why the exigencies are such that the Government would suffer substantial harm unless possession is transferred before the Court could reasonably hear from defendants.

**III.   Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.   The Motion to Deposit Funds (doc. 4) is **granted**.  The Government is **ordered**, on or before **April 19, 2012**, to remit to the Clerk of Court a United States Treasury check in the amount of **$153,826.00**.  The Clerk, in turn, is **directed** to deposit those funds into an interest-bearing account pending further instruction; and

2.   The Motion for *Ex Parte* Order for Delivery of Immediate Possession (doc. 5) is **denied**, without prejudice to plaintiff's ability to renew the motion upon proper notice to defendants or a showing of substantial harm.

DONE and ORDERED this 11th day of April, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[4]       Indeed, the Government has not indicated how defendants are presently using the property, whether defendants or their tenants presently reside on the property, whether it is being used for growing crops that may soon be harvested, and so on.  The Court thus has no information that might assist it in balancing the equities and assessing whether some undue hardship might exist that would warrant the exercise of judicial discretion under § 3114(d)(1) to delay for some defined interval the transfer of possession of defendants' property to the Government.